JEFFREY M. LENKOV, ESQ. (SBN 156478)
JAMIE D. YABKO, ESQ. (SBN 259248)
**MANNING & MARDER**
**KASS, ELLROD, RAMIREZ LLP**
15th Floor at 801 Tower
801 South Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 624-6900
Facsimile: (213) 624-6999

Attorneys for Defendants BATH & BODY WORKS, LLC,
and LIMITED BRANDS STORE OPERATIONS, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCZI GREENWOOD-SKUFCA,<br><br>Plaintiff,<br><br>vs.<br><br>AJR PRODUCTIONS, INC.; RAR BEAUTY, LLC; BATH & BODY WORKS, LLC; LIMITED BRANDS STORE OPERATIONS, INC.; and DOES 1 - 50,<br><br>Defendants. | **Case No.: SACV10-00326-AG-AN**<br><br>**JOINT STIPULATION RE: DEFENDANTS' MOTION TO COMPEL PRODUCTION OF SAMPLE OF CLEANSER FOR EXPERT TESTING**<br><br>Motion Date: December 30, 2010<br>Time: 10:00 AM<br>Courtroom: 6B<br>Hon. Arthur Nakazato<br><br>Complaint Filed: 02/18/2010<br>Discovery Cut-off: 12/8/10<br>Final Pre-Trial Conference: 2/21/11<br>Trial: 3/8/11 |

Plaintiff Nanczi Greenwood-Skufca and Defendants Bath & Body Works, LLC, and Limited Brands Store Operations, Inc., hereby submit this Joint Stipulation per Local Rule 37-2 in support of Defendants Motion to Compel Plaintiff to produce a sample of the cleanser allegedly causing her physical damage to Defendants for expert testing.

**TABLE OF CONTENTS**

I.   MATTERS IN DISPUTE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  **DEFENDANTS' POSITION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.   **Introduction**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.   **Plaintiff Was Obligated To Produce A Sample Of The Cleanser For Testing Per FRCP Rule 26 Even Without A Written Rule 34 Demand**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.   **Plaintiff Has Refused To Produce A Sample of The Cleanser Despite Her Obligation To Do So Per FRCP Rule 26 and Despite Defendants' Reasonable Efforts To Obtain The Sample**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    D.   **The Court Should Order Plaintiff To Produce A Sample of The Cleanser For Testing by Defendants, Without Any Of The Conditions Requested By Plaintiff**. . . . . . . . . . . . . . . . . . . . . . . 10

III. **PLAINTIFF'S POSITION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.   **Rule 26 Does Not Require Production of the Cleanser**. . . . . . . . . 12

        1.   **Rule 26(a)(1)(A)(iii) Requires Disclosure of Things Related to the Computation of Damages; Not Production of All Things Generally Relevant to the Case**. . . . . . . . . . . . . . . . . . . . . . . . 12

        2.   **Even if Rule 26 Required Production of the Cleanser, Rule 26 Does not Provide for Testing**. . . . . . . . . . . . . . . . . . . 13

    B.   **Defendants Cannot Compel Production Under an Agreement Because There was no Agreement and Because the Law Prohibits Such Efforts to Compel**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        1.   **There Was No Agreement by the Parties**. . . . . . . . . . . . . . . . 14

        2.   **Even if a Written Agreement for Production Existed, Defendants Could Not Compel Production**. . . . . . . . . . . . . 15

    C.   **Plaintiff's Offer to Resolve the Dispute**. . . . . . . . . . . . . . . . . . . . . 16

## I.   MATTERS IN DISPUTE

Plaintiff Nanczi Greenwod-Skufca alleges in her Complaint, filed on February 18, 2010, that in or about February 2009, she purchased a product entitled "Joey New York Pure Pores Blackhead Remover and Pore Minimizer Gel" (the "Cleanser") from a retail store owned by Defendants Bath & Body Works, LLC, and Limited Brands Store Operations, Inc.  (Complaint, ¶¶5-8, 18).

Plaintiff alleges that Cleanser was designed, manufactured and/or distributed by Defendants AJR Productions, Inc., and/or RAR Beauty, LLC.  (Complaint ¶¶2-5). Plaintiff alleges that the Cleanser was defective and unsafe for its intended purposes in that it was likely to cause severe burning and skin damage when applied to the skin and that she suffered excruciating pain and severe burning of the skin on her face upon using the product in February 2009.  (Complaint ¶¶18-20).

In June 2010, Plaintiff disclosed the existence of the Cleanser in her Initial FRCP Rule 26 Disclosures.  In or about August 2010, Defendants' counsel, Jeffrey M. Lenkov, Esq., of Manning & Marder, Kass, Ellrod, Ramirez, LLP, commenced efforts to obtain from Plaintiff's counsel, Benjamin Berger, Esq., of Berger Harrison APC, a sample of the Cleanser for expert testing.  As of the filing of this motion to compel, Plaintiff still had not provided a sample of the Cleanser for testing by Defendants.

Defendants contend that Plaintiff was required to produce a sample of the Cleanser for testing pursuant to FRCP Rule 26 and in compliance with Plaintiff's counsel's repeated representations that it would produce the sample.   Plaintiff contends she had no obligation to produce the sample under FRCP 26 and that she is not otherwise obligated to produce a sample.

Accordingly, Defendants seek an order from the Court compelling Plaintiff to provide Defendants with a 1-gram sample of the Cleanser actually used by Plaintiff (as well as 1-gram samples from two other bottles of the same product purchased by Plaintiff subsequent to the accident and already analyzed and tested by her) so that

Defendants can have the samples tested by their chosen expert.

## II. DEFENDANTS' POSITION

### A. Introduction

As set forth in the accompanying Declaration of Jeffrey M. Lenkov, counsel for Defendants, in or about August 2010, he commenced efforts to obtain from Plaintiff's counsel, Benjamin Berger, Esq., of Berger Harrison APC, a sample of the Cleanser for expert testing.

Initially, Mr. Berger explicitly represented to Mr. Lenkov that he would make a sample of the Cleanser available to Defendants for their own expert testing, without conditions and without the requirement of Defendants serving a formal Rule 34 demand. Mr. Lenkov relied on Mr. Berger's explicit representations, and thereafter attempted to obtain a sample of the Cleanser from him without formally serving a Rule 34 demand.

However, as time progressed, Mr. Berger continued to impose legally unsupportable and increasingly onerous conditions for releasing a sample of the Cleanser to Defendants for testing. Ultimately, in mid-November 2010, Mr. Berger completely refused to produce a sample for testing, claiming that because Defendants had not served a formal Rule 34 demand (which he had excused Defendants from serving months earlier), and it was now less than thirty days before the discovery cut-off of December 8, 2010, he would not produce a sample.

As the contents of the bottle of Cleanser used by Plaintiff are the very heart of this action, Mr. Berger's actions are unconscionable and directly contradictory to his initial position regarding production of a sample of the Cleanser, as well as his obligations under FRCP Rule 26 to produce a sample.

### B. Plaintiff Was Obligated To Produce A Sample Of The Cleanser For Testing Per FRCP Rule 26 Even Without A Written Rule 34 Demand

Except as otherwise provided by stipulation or court order, each party must disclose to other parties certain information regarding witnesses, documents, damage

computations and liability insurance without awaiting a discovery request. FRCP 26(a)(1). Unless an objection has been made or a different time is set by stipulation or court order, the initial disclosures are due within 14 days after the Rule 26(f) early conference. FRCP 26(a)(1)(c). See Schwartzer, Tashima & Wagstaffe, <u>Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions</u> (Rutter Group 2010) §§11:220, 11:225.

In fulfilling this duty, each party must provide copies or a description by category and location of all documents, electronically-stored information, and <u>tangible things</u> in its "possession, custody, or control" and that the disclosing party may use to support its claims or defenses (unless solely for impeachment). FRCP 26(a)(1)(A)(ii). (Emphasis added). Furthermore, a party claiming damages must make available for inspection and copying by the other "the documents or evidentiary material ... on which each computation is based, including material bearing on the nature and extent of injuries suffered" just as if there had been a formal request for production under Rule 34. This includes materials bearing on the nature and extent of any injuries suffered. FRCP 26(a)(1)(A)(iii). See Schwartzer, Tashima & Wagstaffe, <u>Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions</u> (Rutter Group 2010) §§11:250, 11:282.

Accordingly, Plaintiff was required, under FRCP 26, to produce a sample of the Cleanser for inspection and testing, without Defendants being required to make a formal request for production under Rule 34. Plaintiff, however, has refused to do so, despite Defendants' continuous and reasonable efforts to obtain a sample and Plaintiff's counsel's explicit representations that Plaintiff would produce a sample.

**C. Plaintiff Has Refused To Produce A Sample of The Cleanser Despite Her Obligation To Do So Per FRCP Rule 26 and Despite Defendants' Reasonable Efforts To Obtain The Sample**

As set forth in the accompanying Declaration of Jeffrey M. Lenkov, on August 10, 2010, Mr. Lenkov sent Mr. Berger an e-mail confirming his prior conversation with him that Defendants needed to have a sample of the Cleanser so that it could be

examined by a lab, and asking him for a sample. A true and correct copy of this e-mail of August 10, 2010, is attached to Mr. Lenkov's declaration as Exhibit 2.

Mr. Berger responded to Mr. Lenkov via e-mail on August 11, 2010, stating that the Cleanser (and two other bottles of the same product he'd purchased) were at a laboratory in Petaluma, CA. Mr. Berger also stated as follows: "Shall we coordinate for you to have someone appear at the lab where we can provide you with a sample from each bottle? Do you instead just want me to have a sample of each sent to you or your lab?" A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 2.

Mr. Lenkov responded to Mr. Berger via e-mail on that date, stating "A sample could be good." A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 2.

Mr. Berger responded to Mr. Berger via e-mail on that date stating "If you want me to have samples shipped (I assume you want a sample from each of the three bottles I have), tell me where to ship them. If you want to have them picked up from my lab, let me know so that we can coordinate it." A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 2.

On August 21, 2010, Mr. Berger sent Mr. Lenkov an e-mail (a true and correct copy of which is attached to Mr. Lenkov's declaration as Exhibit 3) stating that he preferred for the parties to choose a neutral lab where each side could have experts present to witness the testing, opining that would meet his obligation to provide the Cleanser for Defendants' inspection.

On August 27, 2010, Mr. Berger sent Mr. Lenkov a letter (a true and correct copy of which is attached to Mr. Lenkov's declaration as Exhibit 4), attaching a copy of test results performed by Plaintiff's "consultant" allegedly showing a dangerously high concentration of salicylic acid in the Cleanser. In this letter, Mr. Berger proposed that the parties "select a laboratory where our consultants attend and/or jointly conduct an analysis" and requesting Mr. Lenkov's opinion regarding same.

On September 15, 2010, Mr. Berger sent Mr. Lenkov an e-mail regarding Plaintiff's deposition. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 5. In this e-mail, Mr. Berger acknowledged that he and Mr. Lenkov had discussed making the Cleanser available to Defendants for testing/inspection. Mr. Berger reiterated his suggestion that the parties find a "neutral site where our experts could perform/witness some testing."

On November 4, 2010, Mr. Lenkov sent Mr. Berger an e-mail requesting that he telephone Mr. Lenkov about providing the long-requested sample. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 6.

Having not heard from Mr. Berger, Mr. Lenkov sent him another e-mail on November 5, 2010. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 7.

Mr. Berger responded later that morning, stating that "we have to talk about testing of the product" and asking if Mr. Lenkov wanted to "test the stuff in Petaluma or where?" A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 7.

Mr. Lenkov responded to Mr. Berger via e-mail later that morning, stating that Defendants needed to send it to a laboratory in New Jersey. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 7.

Mr. Berger responded via-mail later that morning, stating "I don't think I have to do that but will consider it. Maybe I do." A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 7.

Mr. Lenkov responded to Mr. Berger via e-mail later that morning, advising him that the testing was necessary in order to evaluate Plaintiff's case. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 7.

Mr. Berger thereafter responded via e-mail later that morning, and admitted that "I have to produce it for testing/inspection." However, he objected to the location of the testing in New Jersey. A true and correct copy of this e-mail is

attached to Mr. Lenkov's declaration as Exhibit 7.

Mr. Lenkov thereafter responded via e-mail later that morning, advising Mr. Berger that it was a top rated laboratory, and that the sample could be sent via Federal Express. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 7.

On November 12, 2010, Mr. Lenkov sent an e-mail to Mr. Berger requesting that he get back to Mr. Lenkov on the testing. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 8.

On November 15, 2010, Mr. Lenkov sent an e-mail to Mr. Berger requesting that he call Mr. Lenkov as Mr. Lenkov wanted to resolve this dispute without the necessity of filing a motion. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 9.

On November 16, 2010, Mr. Lenkov sent an e-mail to Mr. Berger advising him that they still needed to work out the testing issue. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 10.

Mr. Berger and Mr. Lenkov thereafter spoke on the telephone, and Mr. Lenkov memorialized the contents of their conversation in an e-mail of November 16, 2010. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 11. During this conversation, Mr. Berger stated that it would be "malpractice" to now allow testing of the product and he intimated that he might now refuse testing because it was now too late for Defendants to timely serve a Rule 34 demand in advance of the December 8, 2010, discovery cut-off. This was the first time that Mr. Berger ever mentioned that he would produce a sample of the Cleanser only upon service of a written Rule 34 demand. Previously, Mr. Berger had continually stated to Mr. Lenkov that he would be willing to provide a sample without requiring Defendants to serve a Rule 34 demand.

Mr. Berger thereafter sent Mr. Lenkov an e-mail falsely stating that my statements were a "transparent and self-serving effort to manufacture some

justification for this 'situation.'" A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 11.

Mr. Lenkov's colleague David J. Wilson, Esq., thereafter sent an e-mail to Mr. Berger on November 16, 2010, reminding him that he had continually represented that he would produce a sample of the product for testing but only on that date had taken the position that the discovery cut-off was a barrier to production. Mr. Wilson also demanded that Mr. Berger provide dates within the next ten days when he would be available to meet and confer pursuant to Local Rule 37.1 regarding this dispute. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 11.

Mr. Berger thereafter responded to Mr. Wilson stating that he had adopted his position that the discovery cut-off was a barrier to production only the day before. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 11.

On November 16, 2010, Mr. Berger responded to Mr. Lenkov in e-mail (a true and correct copy of which is attached to Mr. Lenkov's declaration as Exhibit 12) in which he reiterated his refusal to produce a sample of the Cleanser, stating that (1) the deadline for Defendants to timely serve a Rule 34 demand had passed without either party realizing it, (2) there was no agreement to waived the deadline, and (3) Defendant no longer had the right to inspect the Cleanser. Notwithstanding, Mr. Berger offered to provide a sample under the following terms:

    a.    Testing would take place at a laboratory within California, at a facility mutually chosen by both sides. Absent said agreement Defendants list five laboratories with which they had no affiliation and Plaintiff to select one from the list.

    b.    The laboratory to be jointly hired and costs to be shared equally.

    c.    The parties to stipulate to the foundation and admissibility of the report prepared by the joint laboratory and as to the foundation and

admissibility of the report already prepared by his laboratory.

d. The laboratory would test for pH of the Cleanser, the presence and concentration of organic acids, and the presence and concentration of salicylic acid.

e. Testing to be performed on the Cleanser purchased by Plaintiff and two other samples obtained by Plaintiff.

On November 16, 2010, Mr. Lenkov responded to Mr. Berger's e-mail requesting that he respond to Mr. Lenkov's prior e-mail and requesting that they work this out by Plaintiff providing the samples which Mr. Berger already stated he would produce. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 12.

On November 16, 2010, Mr. Lenkov responded further to Mr. Berger's e-mail by advising him that Defendants were entitled to perform their own testing and had already hired a laboratory in New Jersey to perform the testing and that the sample could easily be shipped there via Federal Express. Mr. Lenkov further advised Mr. Berger that Defendants had relied upon his earlier promises that a sample would be provided for testing and that formalities were not important. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 13.

On November 17, 2010, Mr. Berger responded to Mr. Lenkov's e-mail of the prior day. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 13. In this e-mail, Mr. Berger admitted that in their previous communications, he acknowledge that he was required to produce a sample of the Cleanser for testing. Notwithstanding this acknowledgment of his earlier representation, Mr. Berger continue to refuse to produce a sample of the product except on the conditions of a joint retention of a laboratory in Petaluma, CA, and the joint stipulation and authenticity of all test results. Furthermore, in this e-mail, Mr. Berger claimed that it would constitute "legal malpractice" for him to produce a sample of the product as though Defendants had served a Rule 34 request.

Thereafter, on November 17, 2010, Mr. Wilson responded to Mr. Berger and asked him what his objection was to the expert which Defendants had selected and, if none, why he continued to object to producing a sample for testing. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 14.

On November 17, 2010, Mr. Lenkov also responded to Mr. Berger, and advised him that it was not permissible for him to demand that Defendants agree to a joint expert in order for him to release a sample for testing. A true and correct copy of this e-mail is attached to Mr. Lenkov's declaration as Exhibit 15.

On November 17. 2010, Mr. Lenkov's office sent the letter attached hereto as Exhibit 16 to Mr. Berger requesting that counsel conduct the required Rule 37.1 meeting prior to filing this motion within ten days thereafter and setting forth Defendants' legal position.

Mr. Lenkov's colleague, Robert P. Wargo, Esq., "met and conferred" with Mr. Berger in two telephonic sessions which occurred on November 23, 2010. Mr. Berger continued to refuse to produce a sample of the Cleanser for testing unless Defendants agreed to the conditions of a joint retention of a laboratory in Petaluma, CA, so that the parties' counsel and/or their experts could "observe" the testing; that the parties, in consultation with their experts, jointly agree on a testing protocol; and that the parties stipulate to the authenticity and admissibility of all test results.

### D. The Court Should Order Plaintiff To Produce A Sample of The Cleanser For Testing by Defendants, Without Any Of The Conditions Requested By Plaintiff

To date, Mr. Berger has offered no legal authority for his position that he is entitled to demand that the parties jointly retain an expert, jointly retain a laboratory, jointly develop a testing a protocol and/or stipulate to the authenticity and admissibility of all test results. Mr. Berger also has offered no legal authority for his position that he is not required to provide Defendants with a sample of the product for testing pursuant to Rule 26. To the contrary, the parties are entitled to retain whatever experts they deem appropriate, and perform whatever testing they desire to

perform, and at the location where they desire to perform the tests, and it is up to the opposing side to challenge the qualification of the experts and/or their testing procedures if they deem it appropriate.

Furthermore, it is entirely inappropriate for Mr. Berger to demand that the parties agree to a "joint" testing protocol, as such a demand impermissibly necessitates the disclosure of litigation strategy, as one party's expert may deem it necessary to conduct certain tests that the other side's expert may not have contemplated.

Mr. Berger has advised that there are only approximately two ounces of Cleanser left in the bottle and has expressed concern that the product will be dissipated completely if testing is performed separately by all parties (including the product manufacturers, who have not yet been served). However, Defendants will require only one gram of the product to complete its testing, and as there are approximately 28 grams per ounce, more than an ample amount of the product will remains after giving Defendants a sample.

Accordingly, Defendants request that the Court order Plaintiff to provide a 1-gram sample of the Cleanser used by Plaintiff (as well as 1-gram samples of the other two bottles Plaintiff purchased and has had tested) to Defendants forthwith so that Defendants can send the samples to its chosen laboratory, Alliance Technologies, LLC, in Monmouth Jct., NJ, for expert testing.

### III. PLAINTIFF'S POSITION

This motion is misleading from square one. Since removing this case, defendants' counsel (all seven of them) have neglected this file and are now scrambling in search of relief from their carelessness. Rather than present the true story (which is: defendants were recently startled to realize that the last day to propound written discovery had sailed by and that they had failed to request production of the Cleanser in any of their several sets of written discovery), defendants instead make half-hearted efforts to argue (1) that Rule 26 requires

production and (2) that plaintiff promised to produce the Cleanser.

### A. Rule 26 Does Not Require Production of the Cleanser

#### 1. Rule 26(a)(1)(A)(iii) Requires Disclosure of Things Related to the Computation of Damages; Not Production of All Things Generally Relevant to the Case

In what is essentially an admission that the argument lacks merit, defendants have devoted just one page to the argument that Rule 26 required plaintiff to produce the Cleanser. As a preliminary matter, Rule 26(a)(1)(A)(ii) required plaintiff to produce or identify tangible things she may use to support her claims. Dutifully, plaintiff identified the defective product in her Initial Rule 26 Disclosures (Declaration of Benjamin Berger, ¶2; Exhibit 101.) Such identification satisfied the call of Rule 26(a)(1)(A)(ii). The other subsection cited by defendants, Rule 26(a)(1)(A)(iii) ("Little 3"), required plaintiff to compute her damages. As required, within plaintiff's initial disclosures, she stated a dollar amount for each of the following categories of damages: (1) past medical bills, (2) future medical expenses, (3) "pain, suffering, humiliation, emotional distress, etc." and (4) punitive damages. (attached?) In doing so, plaintiff satisfied Little 3. Defendants have not articulated how or why Little 3 requires plaintiff to produce the cleanser for testing. Instead, defendants have glossed over Little 3 in an attempt to misconstrue the subsection. In fact, defendants completely ignore the thrust of the subsection – the computation of damages. The meaning of Little 3 can be easily ascertained from a simple reading of its plain language. Little 3 provides two categories of things which must be produced, each of which concerns the computation of damages. The first category is:"a computation of each category of damages claimed by the disclosing party[.]"The second category (which is presumably what defendants rely upon) is:"the documents or other evidentiary material . . . on which each computation is based[.]" The Cleanser is not something on which damage computations are based - and defendants have made no assertion to the contrary. Defendants do mention the final phrase of Little 3 which is, "including materials bearing on the nature and

extent of injuries suffered," but defendants make no effort to actually interpret such a provision.  An interpretation favoring defendants is not possible because that final phrase doesn't expand the scope of the second category of Little 3.  Its scope remains: things on which damage computations are based.Furthermore, the significance of the word "computation" cannot be overlooked.  Little 3 doesn't refer to the existence of damages, or the mere quantity of damages.  Congress chose the word "computation."  The language is plain and the meaning is clear.  Little 3 deals with the computations, calculations, or mathematical operations used to arrive at the amount of damages claimed. Presumably, defendants want the Court to construe Little 3 so that it requires production of all things which may be relevant to the case (because that is the only construction which would be broad enough to serve defendants' purposes).  Notwithstanding that such an interpretation would swallow up most of Rule 34, defendants have provided no example of a court interpreting Little 3 so broadly.   In fact, the authority cited by defendants refers to receipts, P&Ls, and other financial documents – all of which relate to the computation of damages.  Schwartzer, Tashima & Wagstaffe, CAL. PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL (Rutter Group 2008) §§11.280.  Rule 26 does not require production of the Cleanser.

### 2. Even if Rule 26 Required Production of the Cleanser, Rule 26 Does not Provide for Testing

By its own terms, Little 3 provides that things to be made available thereunder are to be made available for inspection and copying only.  Rule 34 also provides for inspection and copying.  However, because Rule 34 contemplates infinitely more than Little 3 in terms of things to be produced, Rule 34 goes much farther and provides for sampling and testing, the very things defendants seek by this motion! Accordingly, Rule 34 is defendants' only avenue to obtain sampling and testing.  Rule 26 did not and does not require plaintiff to provide defendants with a sample of the Cleanser to test.  Defendants are well-aware of the method to obtain things from

plaintiff, in that a total of seventy-seven (77) requests for production were served but the Cleanser was never requested. (Declaration of Benjamin Berger, ¶3.)

### B. Defendants Cannot Compel Production Under an Agreement Because There was no Agreement and Because the Law Prohibits Such Efforts to Compel

#### 1. There Was No Agreement by the Parties

Defendants ask the court to compel compliance with an agreement yet fail to provide the terms of any such agreement. Despite attaching about two dozen letters and emails which admittedly discuss potential methods and conditions of production, defendants offer no such writing as support for the alleged agreement. The writings summarized by defendants tell the story of two lawyers engaging in good faith dialogue about how, where and when production will be made. The writings stop far short of memorializing or even suggesting an actual agreement. Moreover, defendants' own timeline provides the following:

- August 21, 2010: Berger writes that he prefers the product be tested at a neutral facility
- August 27, 2010: Berger writes that the parties should select a laboratory where the experts jointly conduct an analysis
- September 15, 2010: Berger writes again to say the product should be tested at a neutral site.

In the context of defendants' own assertion that Berger repeatedly requested a neutral testing facility, one would assume defendants assert that an agreement was reached to test in that manner. However, defendants rejected an offer to allow testing on those terms as late as mid-November. It is impossible to determine what agreement the defendants believe was reached. Defendants suggest they were tricked by plaintiff's promise to cooperate informally. This conveniently manufactured position is refuted by the facts. Defendants exhibited the following adherence to formality, all before a dispute arose as to the production of the Cleanser:

- June - Served a Notice of the Deposition of Plaintiff containing a

-14-

demand for fifty two (52) categories of documents/things. (Declaration of Benjamin Berger, ¶7; Exhibit 105.)

- July - Served Demand for Production of Documents/Things – Set 1 (Declaration of Benjamin Berger, ¶4; Exhibit 102.)
- Aug - Served Demand for Production of Documents/Things – Set 2 (Declaration of Benjamin Berger, ¶5; Exhibit 103.)
- Nov - Served Demand for Production of Documents/Things – Set 3 (Declaration of Benjamin Berger, ¶6; Exhibit 104.)
- Nov - Insisted that a written agreement to extend expert disclosures was not good enough and that a court order was required. (Declaration of Benjamin Berger, ¶8)

Defendants' characterization of their failure to request production of the Cleanser as some innocent reliance upon plaintiff's agreement to cooperate is transparent, especially in light of the adherence formalities identified above. Furthermore, defendants have committed numerous procedural gaffes, corroborating plaintiff's position; that the missing Rule 34 request is just one item on a long list of mistakes (a few of which are apparent in that Exhibits 102 – 105 are carelessly prepared on California state court pleadings and/or propounded under state court authority rather than applicable rules of the FRCP). The claim that defendants' mistake was anything other than a textbook example of a blown deadline is simply not plausible.

### 2. Even if a Written Agreement for Production Existed, Defendants Could Not Compel Production

A party wishing to compel production may not rely upon an agreement of a party to do so. Instead, the party must first serve a formal discovery request and move on the basis of a failure to produce thereunder. James v. Wash Depot Holdings, Inc. (SD FL 2006) 240 FRD 693, 694-695).

//

### C.     Plaintiff's Offer to Resolve the Dispute

Throughout this litigation, counsel for plaintiff was cooperative and was even eager for defendant to confirm what plaintiff already knew – that the product contains a very dangerous amount of salicylic acid.  However, after enduring insults and personal attacks from defense counsel for months, and after realizing that the discovery deadline had passed without either party realizing it, that willingness diminished.  (Declaration of Benjamin Berger, ¶¶ 9 – 12.)  However, even after it became apparent that defendants had blown the deadline, and even after defense counsel began lashing out with fabricated accusations of impropriety, plaintiff made generous offers to defendants which would allow testing at a neutral facility in California.  (Declaration of Benjamin Berger, ¶13; Exhibit 107.)  Shockingly - but consistent with defendants' refusal to accept responsibility for their own actions - defendants rejected plaintiff's generosity and insisted that the product be shipped to New Jersey for testing.   (Declaration of Benjamin Berger, ¶13.)

Date:   December 8, 2010               MANNING & MARDER
                                       KASS, ELLROD, RAMIREZ LLP

                                       /s/ Jeffrey M. Lenkov
                                       Jeffrey M. Lenkof, Esq.
                                       Counsel for Defendants BATH &
                                       BODY WORKS, LLC, and LIMITED
                                       BRANDS STORE OPERATIONS, INC.


Date:   December 8, 2010               BERGER HARRISON, APC

                                       /s/ Benjamin Berger, Esq.
                                       Benjamin Berger, Esq.
                                       Counsel for Plaintiff NANCZI
                                       GREENWOOD-SKUFCA